
DISTRICT COURT OF GUAM

TERRITORY OF GUAM



MARY GRACE SIMPAO, CHRISTINA NAPUTI and JANICE CRUZ, on behalf of themselves and a class of others similarly situated,

    Plaintiffs,

vs.

GOVERNMENT OF GUAM,

    Defendant.

Civil Case No. 04-00049

ORDER

This matter is before the Court on the Plaintiffs' Partial Summary Judgment motion. *See* Docket No. 59. After hearing argument from counsel and reviewing the parties' submissions, as well as relevant caselaw and authority, the Court hereby memorializes the bases for its rulings herein.

**BACKGROUND**

In the tax years prior to 1995, Guam taxpayers claimed the Earned Income Tax Credit ("EIC") and the Government of Guam paid it.[1] However, in the years 1995 and 1996, the Government of Guam stopped paying the EIC. In 1996 the Department of Revenue and Taxation

---

[1] The EIC also referred to as the EITC was first enacted by the United States Congress in 1975 and codified as Section 43 of the U.S. Internal Revenue Code of 1954. *See* U.S. Public Law 94-12, § 204. The EIC is a refundable Federal income tax credit for low-income working individuals and families. It allows an eligible individual to claim a tax credit against the amount of income tax liability, if any, on his or her annual income tax return.

("DRT") issued a ruling ("Revenue Ruling No. 96-001") regarding whether the EIC applied in Guam under the Guam Territorial Income Tax ("GTIT"). *See* Canto Decl., at Exhibit C, attached thereto. It concluded that it did not. The Attorney General of Guam issued his own opinion on the matter and agreed with the DRT's ruling. *Id.*, Exhibit B ("Attorney General of Guam Memorandum Opinion DRT/DOA 96-001 ('1996 AG Opinion')), attached thereto.

In light of the DRT's ruling and Attorney General's opinion, the Government of Guam published that EIC was inapplicable in Guam on its tax return forms for the years 1995 and 1996 and 1999 through 2003.[2] *See* Answer at ¶ 3. For example, the 1999 1040A tax form contained the language "**Not Applicable**" where Earned Income Credit was listed. *See* Canto Decl., Exhibit L, attached thereto.[3] For the years 1997 and 1998, such prohibitory language was not on the Government of Guam's tax forms. *See Id.*, Exhibit E, attached thereto.

For tax years 1995 and 1996, the Government of Guam did not pay refunds associated with EICs. *See* Answer at ¶ 18. In the years 1997 and 1998, qualified Guam taxpayers could claim EIC on their tax returns. However, only some of the EIC claims were paid for the tax year 1997 and with the exception of one individual taxpayer, no EICs were paid for the tax year 1998. *Id.* at ¶s 7, 21 and 23. No EICs were paid for the tax years of 1999 through 2003.

On January 12, 2005, the Governor of Guam issued an Executive Order indicating the Government would establish a procedure whereby EIC claims would become a part of a qualified taxpayer's tax return. *See* Canto Decl., Exhibit F, attached thereto. Shortly after the Governor issued this order, the DRT published forms with which to make claims for the relevant tax years of 1995 though 2004. *Id.*, at Exhibit G, attached thereto.

The plaintiffs have collectively filed individual income tax returns with the Government of Guam during the tax years 1995 through 2003. *See* Canto Decl., at Exhibit L, attached thereto. None of the plaintiffs received an EIC offsetting the taxes paid during those years. Additionally,

---

[2] Guam issues it own 1040 forms.

[3] The plaintiffs in some of the years in question actually used the federal form 1040 which did not black out the EIC portion.

2

none of the plaintiffs filed an administrative claim for a refund of overpaid taxes. The plaintiffs, Mary Grace Simpoa, Christiana Naputi and Janice Cruz,[4] on behalf of themselves and a class of other similarly situated, ("plaintiffs") brought this action against the Government of Guam seeking declaratory relief regarding the applicability of the EIC to Guam taxpayers and refunds from tax overpayments.

## DISCUSSION

The plaintiffs now move for partial summary judgment and seek the following relief: (1) A declaration that, under the GTIT, the EIC applies to Guam and requires refunds of properly claimed EIC claims; (2) A declaration that, by filing income tax returns that contain no claim for the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by the GTIT as a condition precedent to bringing suit; (3) A declaration and injunctive relief requiring the Government of Guam to provide notice to plaintiffs of their right to file EIC claims and creating procedures for filing such claims under the GTIT, or alternatively, a declaration that the Government of Guam must refund EIC claims to plaintiffs upon filing proper amended tax returns containing an EIC claim under the GTIT; and (4) A declaration and injunctive relief that the Government of Guam must enforce certain local Guam laws concerning amounts that are alleged to be required to be set aside to pay the EIC.

Summary judgment is appropriate when the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party opposing summary judgment cannot rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial. *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988). Moreover, to defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any disputed element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v.*

---

[4] On April 14, 2005, when the summary judgment motion was filed, Janice Cruz, was not a named plaintiff. However, on April 18, 2005, plaintiffs filed a Second Amended Complaint wherein, plaintiff Cruz was added.

3

*Catrett*, 477 U.S. 317, 322, 102 S.Ct. 2548 (1986).

Before addressing the merits of the motion, the defendant makes a number of objections. The defendant first contends that the plaintiffs' motion is premature. The motion is based on the Second Amended Complaint. However, the motion was filed on April 14, 2005 and the Second Amended Complaint was filed on April 18, 2005, four days after the motion. The defendant claims that in filing the motion, the plaintiffs misrepresented that the Second Amended Complaint contained no new facts, "apart from the addition of the plaintiff. All of the defendant's answers therefore to the Second Amended Complaint are required to be identical to its answers to the First Amended Complaint, save for those referring to the newly added Plaintiff Janice Cruz." *See* Motion, p.2. The defendant claims that this is not true. This Court agrees. In comparing the First Amended Complaint with the Second Amended Complaint, the Court notes that there are changes in the Second Amended Complaint that pertain to the original plaintiffs, Ms. Simpao and Ms. Naputi.[5] Notwithstanding the changes to the Second Amended Complaint, the substance of the complaint remains the same. Moreover, the changes have no bearing on the relief sought in the motion requiring this Court to hold the motion in abeyance.

The defendant also argues that the Declaratory Judgment Act and Anti-Injunctive Relief Act prohibit the relief sought. The Declaratory Judgment Act states that:

> [i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

The defendant argues that the Declaratory Judgment Act prohibits declaratory relief with respect to *federal taxes*. (Emphasis added.) However, in this instance, the plaintiffs argue that GTIT is not a federal tax so therefore the Declaratory Judgment Act does not bar the relief

---

[5] The plaintiffs are admonished that they are to exercise care in making representations to the Court and are cautioned that any further misrepresentations may result in the imposition of sanctions and/or other action deemed appropriate.

4

sought. This Court notes that this issue was discussed and ruled upon in the Court's prior Order concerning the defendant's motion to dismiss.[6] Honorable Ronald S.W. Lew agreed with the plaintiffs and found that the Declaratory Judgment Act did apply. Likewise, the Court addressed the applicability of the Anti-Injunction Act in its prior Order. The Anti-Injunction Act generally prohibits suits "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). Judge Lew held that the Anti-Injunction Act did not bar the plaintiffs' claims because the suit was not brought for the purpose of restraining the assessment or collection of taxes, but was instead brought for the applicability and enforcement of the EIC. This Court finds Judge Lew's rulings to be the law of the case and will not otherwise disturb them. *See United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir.2000) ("Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'").

Turning now to the real issue before the Court, does the EIC apply to Guam and if so, what actions must the Government of Guam take in order to administer it. At the outset of its discussion, the Court notes that this issue has been unsettled for years.

Apparently, the issue was first raised in 1989. The Attorney General concluded in Memorandum Opinion No. DOA 89-0750 to the Director of Administration ("DOA"), that Guam was obligated to pay the EIC in excess of the tax owing. *See* Canto Decl., at Exhibit A, attached thereto. The Attorney General stated that:

> Guam currently uses a mirror image of the Internal Revenue Codes as its basis for collecting income taxes. Some time ago, the Territory received the permission of Congress to enact its own tax code in the 1986 Tax Reform Act.[7] By Executive Order, we have established the Guam Tax Reform Commission to determine and recommend how we will delink from IRC. The Earned Income Credit (EIC) and its applicability to Guam is one of the issues currently before the Commission. We have been informed that Guam had previously received an annual reimbursement from the

---

[6]*See* Order, Docket No. 53.

[7]In 1986, Congress authorized Guam to "de-link" from the I.R.C. and pass its own tax laws that would go into effect "upon an exchange of notes" by the governments of Guam and the United States. Tax Reform Act of 1986, §§ 1271, 1277(b), Pub.L. No. 99-514, 100 Stat.2085.

5

> federal government amounting to several million dollars, but that the practice was halted during the administration of President Carter.
>
> It appears that because we have the authority to delink from IRC, and yet choose not to do so (if only by our inaction), that we are in a position of being responsible for any shortfall resulting from following federal tax policies which are entirely discretionary upon us. We might be able to attempt to seek reimbursement for the estimated or actual shortfall caused by Earned Income Credit. However, the response of Congress is likely to be that we merely have to rewrite our local tax code to remove this burden.

A few years later, on or about January 4, 1996, the Attorney General revoked its earlier Memorandum Opinion DOA 89-0750 and adopted the DRT's Revenue Ruling 96-001. *See* Canto Decl., at Exhibit B, attached thereto. The Attorney General decided that: (1) EIC was not applicable in Guam and should not be administered by DRT, and (2) DRT should not certify to the DOA for the payment of any amounts owing as refundable EIC. *Id.*

In response to the change in tax policy the Legislature enacted its own program (Guam Earned Income Program) to ensure that Guam's taxpayers would receive the EIC. *See* 11 Guam Code Ann. § 4108. The program mirrored the federal program under 26 U.S.C. § 32. However, the program was never implemented and in 2000, the Legislature filed a declaratory judgment action with Guam's Supreme Court asking for its opinion as to whether Guam's taxpayers were entitled to the EIC, pursuant to Subtitle A of the IRC and applied to Guam by the operation of the Organic Act, 48 U.S.C. § 1421 et seq. *See In re Request of I Mina'Bente Sing'Kona Liheslaturan Guahan Relative to the Application of the Earned Income Tax Credit Program to Guam Taxpayers ("The EIC question")*, 2001 Guam 3, 2001 WL 113985 (Sup. Ct. Guam 2001). After providing a thorough description of the history of the EIC, the Guam Supreme Court held that the EIC must be applied in mirrored fashion to Guam. This Court agrees.

Guam's tax code is based on the Internal Revenue Code. It is made applicable to Guam by the Organic Act and by the provisions of the Code itself. Organic Act §1421i(k); Internal Revenue Code § 7651. In effect, the Congress established a mirror system of taxation.

The Organic Act of Guam states:

(a) Applicability of Federal laws; separate tax

6

> The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam: *Provided,* That notwithstanding any other provision of law, the Legislature of Guam may levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam.
>
> (b) Guam Territorial income tax
>
> The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose separate Territorial income tax, payable to the government of Guam, which tax is designated the "Guam Territorial income tax."

48 U.S.C. § 1421i(a) and (b).

Title 48 U.S.C. § 1421i(d) adds:

> (1) The income tax laws in force in Guam pursuant to subsection (a) of this section include but are not limited to the following provisions of the Internal Revenue Code of 1986, where not manifestly inapplicable or incompatible with the intent of this section: Subtitle A [26 U.S.C.A. § 1 et seq.] . . . and all provisions of subtitle F [26 U.S.C.A. § 6001 et. seq.] . . .

Section 31 of the Organic Act specifically lists the mirroring provisions, including Subtitle A of the I.R.C. which creates and defines the EIC.[8] The EIC was enacted in 1975 to provide tax benefits to low-income workers in the hopes that these benefits would make working more attractive than welfare. Since that time, Guam taxpayers applied for and received EICs until 1995 when the Government of Guam had a shift in tax policy and decided that it was not responsible for the payment of the EIC.

However, it would appear that the shift in policy was more attributable to a shortfall in the public coffers than one in legal reasoning. In DRT's Revenue Ruling No. 96-001, the director stated that "[a] definitive ruling by the Director of DRT is necessary at this time because GovGuam has experienced large amounts of lost revenue and cash outlays under the EITC." *See* Canto Decl., at Exhibit C, attached thereto. Guam's taxpayers should not be made to pay for the financial woes of its sovereign. If Guam is unable to pay for the EIC, it alone, has the power to change its tax code by delinking from the IRC in accordance with the Tax Reform Act of

---

[8] Section 6401(a) of Subtitle F directs the taxing authority to refund the EIC to the taxpayer or credit the EIC overpayment against the taxpayer's liabilities.

7

1986, or by enacting an additional tax to cover its expenses. *See* 48 U.S.C. § 1421i(a). Short of those options, the Court finds that as a matter of law, Guam must pay the EIC.

Moreover, the Court notes that the defendant seemingly has conceded that the EIC applies to Guam. The defendant stated in its Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment that "[t]he position of the Office of the Attorney General, on behalf of the Government of Guam, with respect to the Earned Income Tax Credit ("EIC") is set forth in the Settlement Agreement entered into on June 14, 2004 . . . ."[9] That Settlement Agreement was attached as Exhibit A to a Stipulated Order Granting Preliminary Approval of Class Action Settlement. Some of the positions set forth in the Stipulated Order were as follows:

> 2. "EIC Class" means all persons who (a) filed Guam tax returns and (b) were and are entitled to be paid refundable earned income tax credits under the Guam Territorial Income Tax and the Earned Income Program for any or all of the following tax years: 1996, 1998, 1999, 2000, 2001, 2002 and 2003.
>
> 3. The EIC Class members, otherwise eligible, are entitled to the Earned Income Tax Credit, pursuant to a provision in Subtitle A of the Internal Revenue Code and applied to Guam by operation of the Organic Act, 48 U.S.C. § 1421 et seq.
>
> 4. The Government of Guam is required to pay the Earned Income Tax Credit to eligible taxpayers.[10]

Additionally, the Government of Guam further stated "[t]he Government of Guam does not oppose the Motion for Partial Summary Judgment to the extent it will determine whether the EIC applies to the People of Guam as a matter of law."

Having decided that the EIC applies to Guam, the next question is whether the taxpayers exhausted their administrative remedies in claiming the EIC. According to 26 U.S.C. § 7422(a) a taxpayer is required to file a claim for a tax refund before filing suit.[11] However, in this instance,

---

[9] *See* Clarification of Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment. Docket No. 81.

[10] *See* Certified Copy of Stipulated Order Granting Preliminary Approval of Class Action Settlement With Attached Settlement Agreement in Santos Case, CIV04-00006, Docket No. 82, page 2.

[11] 26 U.S.C. § 7422 states:

8

the plaintiffs argue that the filing of an income tax return acts as a claim for the EIC, since the Government of Guam affirmatively took steps to prohibit a taxpayer from actually filing an EIC claim. The Government of Guam represented to the taxpayers that the EIC was inapplicable or not available on Guam. *See* Canto Decl., Exhibit L, attached thereto. The DRT's policy was to reject claims where individual taxpayers attempted to write EIC claims on their Guam tax forms, submit the U.S. versions of the forms (which did not block out the EIC box), submit the Form 1040 X[12] or submit letters or informal claims. *See* Camacho Decl., at ¶ 9. It was DRT's policy to return such forms to the taxpayer and (sometimes) provide the taxpayer with a copy of the Revenue Ruling stating the EIC did not apply in Guam. This Court is concerned that the Government took actions that discouraged if not actually affirmatively prohibited the filing of a return with the request for the EIC. The Court therefore finds under the circumstances, the filing of the tax returns should be considered a claim satisfying the jurisdictional requirement under 26 U.S.C. § 6511.[13]

The plaintiffs next seek declaratory and injunctive relief requiring the Government of Guam to provide notice to plaintiffs of their right to file EIC claims and creating procedures for filing such claims under the GTIT, or alternatively, a declaration that the Government of Guam must refund EIC claims to plaintiffs upon filing proper amended tax returns containing an EIC

---

(a) No suit prior to filing claim for refund.

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established pursuance thereof.

[12] As used in the federal system, Form 1040 X is used for amended tax claims.

[13] Although the Court has jurisdiction based on the filing of the claims, the Court will refrain at this time from addressing whether the statute of limitations would act as a bar to many of the claims pursued in a refund suit. *See* 26 U.S.C. § 6532(a)(1).

9

claim under the GTIT. The Government of Guam claims that this issue is moot and the request unnecessary as the Government of Guam is already accepting EIC claims and permitting the amendment of tax returns to facilitate such claims, to the extent permitted by federal and territorial law. *See* Camacho Decl., at Exhibit 2, attached thereto.

In January 2005, the Governor of Guam issued Executive Order 2005-001, requiring DRT to create supplemental EIC forms ("Guam Earned Income Credit Application") and to accept the submission of the EIC claims under territorial and, to the extent applicable, federal law. *See* Camacho Decl., at Exhibit 1, attached thereto. It applies to tax years 1995-1996 and 1999-2004, and into the future. *Id.* There are no forms for the years 1997-1998 because DRT had already created a form for the those years and had accepted claims. The Order expressly states that tax returns may be amended as part of such a submission, although amendments are limited to three years as provided under federal law. *Id.* Accompanying the forms is an EIC brochure prepared by DRT. *Id.* at Exhibit 4. Pursuant to the Executive Order, the EIC claims submitted under this procedure shall constitute sufficient claims for the EIC under the GTIT if the EIC is held to apply to Guam. *Id.* at Exhibit 1, ¶ 2. As of April 26, 2005, DRT has received 15,475 claims for the EIC under the Executive Order. *Id.* at ¶ 14 and Exhibit 5.

The plaintiffs state that they are concerned that the forms contain qualifying language that would allow the Government of Guam to ignore its obligation to pay the EIC. The offending language is as follows:

> By providing this form neither the Department of Revenue & Taxation nor any other part of the Government of Guam or its officers are agreeing to make any payment to any taxpayer or any offset in favor of any taxpayer or waiving any applicable law regarding submission of claims.

*See* Camacho Decl., at Exhibit 2.

The plaintiffs claim that since the Government of Guam is claiming there is no obligation to pay the EIC on the forms, the request for declaratory relief is not moot. This Court has reviewed the forms and notes that at the time they were created, the issue of the EIC had not been decided. It seems to reason that in drafting the documents, the Government wanted to preserve its rights should a Court subsequently rule that it had no legal obligation to pay the EIC. Despite

a history of non-payment by the Government, the Court finds the Government of Guam has taken efforts to create forms that would allow it to process the claims in the event it is found responsible for paying the claims.

Under the circumstances, the Court does not find the need to grant declaratory relief. Should the Government of Guam refuse to pay the claims after they have been found owing, the plaintiffs are free to take steps to enforce the payments. The Court is reluctant to grant declaratory relief where there is only the possibility of future harm. *Hodgers-Durgin v. de la Vina* 199 F.3d 1037, 1042 (9th Cir.,1999) ("The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way."). The Court notes that the plaintiffs' complaint is also one for a refund. There is nothing preventing the plaintiffs from proceeding with this action. Accordingly, the Court denies the declaratory and injunctive relief as requested.

Lastly, the plaintiffs ask for injunctive relief requiring the Government of Guam to enforce certain local Guam law (11 Guam Code Ann. § 50101 et seq. and 11 Guam Code Ann. § 51101 et seq.) concerning amounts that are alleged to be required to be set aside to pay the EIC. In 1999, the Legislature amended the Income Tax Reserve Fund law (the "Reserve Fund"), to create a yearly reserve fund to reserve tax receipts for the payment of income tax refunds, the child tax credit, and the EIC. 11 Guam Code Ann. § 50103. It also requires the DOA, DRT and the Bureau of Budget & Management Research to establish a yearly formula for how much money should be reserved from income tax receipts. *Id.* This formula is to be used by DOA to pay projected income tax refunds, child tax credits, and EIC. 11 Guam Code Ann. § 50104.

In addition to the Reserve Fund, the Legislature enacted the Income Tax Refund Efficient Payment Trust Fund Act of 2002 (the "Trust Fund"). The Trust Fund is supposed to receive weekly, quarterly, and monthly deposits (depending on the source) of payroll and other income taxes. 11 Guam Code Ann. § 50102. The formula for such deposits is supposed to be the same formula as the yearly account under the Reserve Fund, except that the money in the Trust Fund account is being reserved for the coming year and is supposed to be earning interest. *Id.* When DOA is ready to release tax refunds, child tax credits, or the EIC, the money is to be transferred

11

from the Trust Fund into the Reserve Fund, and to the taxpayers. *Id.*

The Government of Guam argues that the plaintiffs have no right to sue for the enforcement of the Reserve and Trust Fund laws. The Government of Guam states that these laws are local budget laws designed to benefit the Legislature with regard to expenditures of public funds. There is nothing in the laws themselves that create a generalized private cause of action, much less a right to seek injunctive relief. The plaintiffs therefore should be denied injunctive relief. *See Touche Ross & Co. v. Readington*, 442 U.S. 560, 568 (1979) (an implied cause of action can only be created under a statute if it is consistent with the intent of the legislature.)

The Government of Guam also states that it is complying with the laws to the degree permitted by the intervening budget laws. In 2004, the Guam Legislature passed its budget for fiscal year 2005, P.L. 27-106 (Bill 363), creating a tax refund reserve of $72 million. There was no provision therein for the EIC or other reserves. *See* Guam P.L. 27-106. Based upon the current financial figures available to the Government, $72 million is not sufficient to pay this year's estimated tax refunds and EIC. Decl. of Lourdes Perez, at ¶ 4.

According to the Director of the DOA, an injunction that requires the Government of Guam to immediately begin to set aside money for the EIC could cause a financial crisis. Decl. of Lourdes Perez, at ¶ 8. The Court is concerned about the consequences of ordering the Government of Guam to comply with these laws without a showing of actually how much money would be required and the effects that would have on the operations of the Government. Under the circumstances, the Court finds the request premature in light of the fact that the class has not been certified. There simply are not enough facts to indicate what sum of monies should actually be set aside. In addition, when the plaintiffs proceed with their refund suit, the Court can revisit the issue of how refunds are to be paid if found owing. Should the Government of Guam choose not to take action in paying its obligation, the Court can then take the appropriate action. Accordingly, the Court denies summary judgment as to this request.

///

///

12

## CONCLUSION

In light of the foregoing, the Court grants partial summary judgment as to the issue of whether EIC applies to Guam and that, by filing income tax returns that contain no claim for the EIC, the plaintiffs have nonetheless exhausted their administrative remedies as required by the GTIT as a condition precedent to bringing suit. As to the other requests, the Court denies the relief sought. The plaintiffs are to take action to certify the class and proceed with this matter as a refund suit.[14]

SO ORDERED this **15** day of June, 2005.

_____
RICARDO S. MARTINEZ*
Designated Judge

Notice is hereby given that this document was entered on the docket on JUN 1 5 2005. No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ JUN 1 5 2005
Deputy Clerk            Date

---

[14] The Court notes the conspicuous absence of the United States as a party in this action. The Court questions whether there may be an equal protection argument in light of the fact that Guam taxpayers are not entitled to the Advance EIC and an offset of their social security taxes paid to the federal government.

*The Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, by designation.

13